**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OLD RIVER INVESTMENTS OZ HOLDING, LLC,** | : | **Case No. 1:26-cv-01708** |
| | : | |
| | : | **Judge Michael J. Hendershot** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN FORTNEY, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants John Fortney, Robert McColley, Matt Huffman, and Kimberly Murnieks jointly move to dismiss Plaintiff Old River Investments OZ Holding, LLC's Complaint for absolute legislative immunity, qualified immunity, and lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Alternatively, this Court should dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). A supporting memorandum accompanies this motion.

Respectfully submitted,

*/s/ Mark D. Wagoner*
Mark D. Wagoner (0068577)
Matthew T. Kemp (0093136)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Phone: (419) 241-9000
Fax: (419) 241-6894
mwagoner@shumaker.com
mkemp@shumaker.com

*Counsel for Defendants President of the Ohio Senate Robert McColley, Director of Communications of the Ohio Senate John*

*Fortney, and Director of the Ohio Office of Budget and Management Kimberly Murnieks*

*/s/ W. Stuart Dornette*
W. Stuart Dornette (0002955)
Philip D. Williamson (0097174)
Spencer S. Cowan (0099556)
TAFT STETTINIUS & HOLLISTER LLP
301 E. Fourth Street, Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
dornette@taftlaw.com
pwilliamson@taftlaw.com
scowan@taftlaw.com

J. Jackson Froliklong (00105679)
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Phone: (216) 241-2838
Fax: (216) 241-3707
jfroliklong@taftlaw.com

*Counsel for Defendant Speaker Matt Huffman*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **OLD RIVER INVESTMENTS OZ HOLDING, LLC,** | : | **Case No. 1:26-cv-01708** |
| | : | |
| | : | **Judge Michael J. Hendershot** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOHN FORTNEY, *et al.*,** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

STATEMENT OF ISSUES ....................................................................................................3

FACTUAL BACKGROUND ....................................................................................................3

SUMMARY OF ARGUMENT ....................................................................................................5

ARGUMENT ....................................................................................................6

1. State sovereign immunity bars the official-capacity claims against all Defendants ..........6

2. Plaintiff lacks standing to seek prospective relief against the Legislative Defendants ..... 9

3. Legislative immunity bars Plaintiff's individual-capacity claims against the Legislative Defendants .................................................................. 11

4. Qualified immunity bars Plaintiff's individual-capacity claims against OBM Director Murnieks .................................................................. 13

5. *Pennhurst* immunity and Ohio's Court of Claims framework bar Plaintiff's Ohio law claims ..................................................................15

   a. *Pennhurst* bars Plaintiff's official-capacity state-law claims ............................. 15

   b. Ohio's Court of Claims framework independently bars Counts IV and IX and the individual-capacity state-law claims .................................................... 16

6. The federal claims independently fail on the merits ......................................................17

   a. The due process claims fail because a legislative appropriations decision does not require individualized notice and a hearing or implicate a fundamental right ..................................................................18

   b. Sixth Circuit precedent bars Plaintiff's Contracts Clause claim under Section 1983 ..................................................................19

   c. The Amendment is an appropriations enactment, not a bill of attainder ..............20

   d. Plaintiff does not plead a plausible "class of one" equal protection claim .......... 21

7. The state-law claims state no claim against Defendants personally ............................... 22

CONCLUSION ....................................................................................................24

APPENDIX

A - Relevant portions of Sub. H.B. 2

B – Grant Agreement

C – Relevant portions of Sub. H.B. 54

# TABLE OF AUTHORITIES

**Case(s)** **Page(s)**

*37712, Inc. v. Ohio Dep't of Liquor Control*,
113 F.3d 614 (6th Cir. 1997) ....................18

*ACORN v. United States*,
618 F.3d 125 (2d Cir. 2010)....................21

*Alden v. Maine*,
527 U.S. 706 (1999)....................7

*Am. Rock Mechs., Inc. v. Thermex Energy Corp.*,
608 N.E.2d 830 (Ohio Ct. App. 1992) ....................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................14, 18

*AtriCure, Inc. v. Meng*,
12 F.4th 516 (6th Cir. 2021) ....................24

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) ....................18

*Block v. Canepa*,
74 F.4th 400 (6th Cir. 2023) ....................8

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998)....................11, 12, 13

*Boler v. Earley*,
865 F.3d 391 (6th Cir. 2017) ....................7

*Charles v. Baesler*,
910 F.2d 1349 (6th Cir. 1990) ....................19

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) ....................9

*Citizens in Charge, Inc. v. Husted*,
810 F.3d 437 (6th Cir. 2016) ....................15

*County of Sacramento v. Lewis*,
523 U.S. 833 (1998)....................19

*Cummings v. Missouri*,
71 U.S. (4 Wall.) 277 (1867) ....................21

*Cushing v. Packard*,
30 F.4th 27 (1st Cir. 2022)....................13

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006)....................9

*Doe v. DeWine*,
910 F.3d 842 (6th Cir. 2018)....................7

*Duke Energy One, Inc. v. Cincinnati State Tech. & Cmty. Coll.*,
187 N.E.3d 28 (Ohio Ct. App. 2022)....................23

*Edelman v. Jordan*,
415 U.S. 651 (1974)....................7

*Experimental Holdings, Inc. v. Farris*,
503 F.3d 514 (6th Cir. 2007)....................16

*FCC v. Beach Commc'ns, Inc.*,
508 U.S. 307 (1993)....................19, 22

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*,
528 U.S. 167 (2000)....................10

*Gays Against Groomers v. Garcia*,
169 F.4th 981 (10th Cir. 2026)....................13

*Gravel v. United States*,
408 U.S. 606 (1972)....................12

*Green v. Mansour*,
474 U.S. 64 (1985)....................8

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982)....................14

*Inc. Vill. of Hicksville v. Blakeslee*,
134 N.E. 445 (Ohio 1921)....................11, 15

*Kaminski v. Coulter*,
865 F.3d 339 (6th Cir. 2017)....................20

*Kent v. Ohio House of Representatives Democratic Caucus*,
33 F.4th 359 (6th Cir. 2022)....................12

*Kentucky v. Graham*,
473 U.S. 159 (1985)....................7

*Kniskern v. Amstutz*,
760 N.E.2d 876 (Ohio Ct. App. 2001) .......... 15, 16

*Ladd v. Marchbanks*,
971 F.3d 574 (6th Cir. 2020) .......... 16

*Lamar v. Micou*,
114 U.S. 218 (1885) .......... 3

*Lanman v. Hinson*,
529 F.3d 673 (6th Cir. 2008) .......... 13

*Lathfield Invs., LLC v. City of Lathrup Vill.*,
136 F.4th 282 (6th Cir. 2025) .......... 20

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) .......... 18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 10

*Malley v. Briggs*,
475 U.S. 335 (1986) .......... 14

*McCormick v. Miami Univ.*,
693 F.3d 654 (6th Cir. 2012) .......... 17

*Michigan v. DeFillippo*,
443 U.S. 31, 38 (1979) .......... 15

*Mitchell v. Forsyth*,
472 U.S. 511 (1985) .......... 14

*Mullenix v. Luna*,
577 U.S. 7 (2015) .......... 14

*Murthy v. Missouri*,
603 U.S. 43 (2024) .......... 10

*Nixon v. Adm’r of Gen. Servs.*,
433 U.S. 425 (1977) .......... 20, 21

*State ex rel. Ohio Civ. Serv. Emps. Ass’n v. State*,
56 N.E.3d 913 (Ohio 2016) .......... 23, 24

*Ohio Inns, Inc. v. Nye*,
542 F.2d 673 (6th Cir. 1976) .......... 17

*Pearson v. Callahan*,
555 U.S. 223 (2009)....................14

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984).................... *passim*

*Planned Parenthood Fed'n of Am., Inc. v. Kennedy*,
162 F.4th 155 (1st Cir. 2025)....................21

*State ex rel. Preston v. Ferguson*,
166 N.E.2d 365 (Ohio 1960)....................23

*Puckett v. Lexington-Fayette Urb. Cnty. Gov't*,
833 F.3d 590 (6th Cir. 2016)....................20

*Ramsey v. Bd. of Educ. of Whitley Cnty.*,
844 F.2d 1268 (6th Cir. 1988)....................19

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015)....................7

*S & M Brands, Inc. v. Cooper*,
527 F.3d 500 (6th Cir. 2008)....................8

*Scott v. Taylor*,
405 F.3d 1251 (11th Cir. 2005)....................13

*Selective Serv. Sys. v. Minn. Pub. Int. Rsrch. Grp.*,
468 U.S. 841 (1984)....................21

*State ex rel. Shemo v. Mayfield Hts.*,
765 N.E.2d 345 (Ohio 2002)....................23

*Skatemore, Inc. v. Whitmer*,
40 F.4th 727 (6th Cir. 2022)....................7

*Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*,
641 F.3d 197 (6th Cir. 2011) (en banc)....................12, 13

*Smith v. Ohio State Univ.*,
266 N.E.3d 1 (Ohio Ct. App. 2024)....................23

*State Emps. Bargaining Agent Coal. v. Rowland*,
494 F.3d 71 (2d Cir. 2007)....................13

*Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*,
446 U.S. 719 (1980)....................12, 13

*Tenney v. Brandhove*,
341 U.S. 367 (1951)....................11, 12, 13

*Terry v. Tyson Farms, Inc.*,
604 F.3d 272 (6th Cir. 2010) ....................18

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................9

*TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*,
430 F.3d 783 (6th Cir. 2005) ....................22

*United States v. Brown*,
381 U.S. 437 (1965)....................20

*United States v. Lovett*,
328 U.S. 303 (1946)....................20

*United States v. Tuente Livestock*,
888 F. Supp. 1416 (S.D. Ohio 1995) ....................3, 4

*Universal Life Church Monastery Storehouse v. Nabors*,
35 F.4th 1021 (6th Cir. 2022) ....................10, 11

*Va. Off. for Prot. & Advoc. v. Stewart*,
563 U.S. 247 (2011) ("*Ex Parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury.") ....................7

*Vacco v. Quill*,
521 U.S. 793 (1997)....................19

*Vill. of Willowbrook v. Olech*,
528 U.S. 562 (2000)....................22

*Weiner v. Klais & Co.*,
108 F.3d 86 (6th Cir. 1997) ....................3

*White's Landing Fisheries, Inc. v. Ohio Dep't of Nat. Res.*,
174 F.4th 493 (6th Cir. 2026) ....................16

*Ex parte Young*,
209 U.S. 123 (1908).................... *passim*

*Zilich v. Longo*,
34 F.3d 359 (6th Cir. 1994) ....................21

**Statutes**

42 U.S.C. § 1983 ........................................................................................................ *passim*

Ohio Revised Code § 9.86 ........................................................................................17

Ohio Rev. Code § 126.07 ...............................................................................4, 20, 23

Ohio Rev. Code § 2743.02(A)(1) ..............................................................................17

Ohio Revised Code § 2743.02(F) ..............................................................................17

Ohio Rev. Code § 2743.03(A)(1) ..............................................................................17

**Other Authorities**

1 William Blackstone, *Commentaries on the Laws of England* (George Sharswood ed., 1893) ........................................................................................11

*The Federalist No. 78*, (Alexander Hamilton) (Clinton Rossiter ed., 1961) ...............................21

House Bill 2 ................................................................................................................3

House Bill 54 ..............................................................................................................4

Ohio Constitution ........................................................................................... *passim*

## INTRODUCTION

Plaintiff challenges the General Assembly's rescission of an undisbursed, discretionary appropriation by suing two legislative leaders, a legislative communications staffer, and the Director of the Ohio Office of Budget and Management. But no Defendant is a proper target for the relief Plaintiff seeks.

Four threshold barriers defeat Plaintiff's claims. Sovereign immunity bars its self-styled official-capacity claims, which seek retroactive damages from the state treasury rather than prospective relief from an imminent or continuing violation of federal law. Plaintiff also lacks standing to seek prospective relief against Speaker Huffman, President McColley, and Senate Communications Director Fortney (collectively, the "Legislative Defendants"), none of whom administers the grant program, controls the disputed funds, or could redress Plaintiff's alleged injury. Absolute legislative immunity protects the Legislative Defendants from individual-capacity damages arising from their participation in the legislative process. And qualified immunity protects Director Murnieks, whom the Complaint accuses of nothing more than implementing a duly enacted law.

In addition to those threshold bars, every count fails on the merits:

- Count I fails because the Due Process Clause does not require individualized notice and a hearing before a legislature passes an appropriations bill.
- Count II fails because Sixth Circuit precedent bars Contracts Clause claims under 42 U.S.C. § 1983.
- Count III fails because a contractual interest in a prospective government grant is not a fundamental right protected by substantive due process. This claim also fails under rational-basis review because the General Assembly could reasonably conclude the grant was not the best use of taxpayer funds.
- Count IV fails because it alleges a breach of a contract between Plaintiff and the State, rather than any contractual obligation owed by Defendants personally.

- Count V fails because an appropriations amendment rescinding prospective grant funding is not a bill of attainder, since it neither adjudicates Plaintiff's guilt nor imposes constitutionally forbidden "punishment."

- Count VI fails because it does not plead a viable class-of-one equal protection claim, since it identifies no similarly situated comparator or show that the grant's rescission was irrational.

- Count VII fails because it improperly repackages the State's alleged failure to pay a contractual obligation as a taking by Defendants personally.

- Count VIII fails because eliminating a $3.5 million appropriation is rationally related to the subject of an appropriations bill.

- Count IX fails because it alleges an estoppel theory against the State, not against any Defendant personally.

For these reasons, this Court should dismiss the Complaint against all Defendants.

## STATEMENT OF ISSUES

1. Whether state sovereign immunity bars Plaintiff's official-capacity claims because they seek retroactive payment for a completed injury and do not satisfy *Ex parte Young*.

2. Whether Plaintiff lacks standing to seek prospective relief against the Legislative Defendants because none can redress its alleged injury.

3. Whether legislative and qualified immunity bar Plaintiff's individual-capacity damages claims.

4. Whether *Pennhurst* immunity and Ohio's Court of Claims framework bar Plaintiff's state-law claims.

5. Whether the Complaint otherwise fails to state any federal or state claims.

## FACTUAL BACKGROUND

Plaintiff Old River Investments OZ Holding, LLC is an Ohio limited liability company. (ECF No. 1, Compl. ¶¶ 1–2.) In 2024, the 135th Ohio General Assembly enacted Substitute House Bill 2, appropriating $717.8 million for community-investment projects across Ohio. (*Id.* ¶ 27.) Among those projects was a $3.5 million line item for Plaintiff's "Flats River Development" in Cleveland. (*Id.* ¶¶ 16, 28.)[1]

On August 1, 2024, Plaintiff and Ohio's Office of Budget and Management ("OBM") signed a grant agreement for that project (the "Grant Agreement"). (*Id.* ¶¶ 11–12, 28.)[2] But the Grant Agreement did not guarantee payment. Instead, it expressly provided that nothing in the

[1] Relevant portions of Sub. H.B. 2 are attached as Appendix A. The full text of Sub. H.B. 2 as enrolled can be found at the Ohio General Assembly website at: https://search-prod.lis.state.oh.us/api/v2/general_assembly_135/legislation/hb2/05_EN/pdf/. The Court may consider the enacted legislation as a matter of law without converting this motion into one for summary judgment. *See Lamar v. Micou*, 114 U.S. 218, 223 (1885); *United States v. Tuente Livestock*, 888 F. Supp. 1416, 1418 (S.D. Ohio 1995).

[2] The Grant Agreement is attached as Appendix B. Because the Complaint extensively references the Agreement and bases its claims upon it, the Court may consider it at the pleading stage. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

agreement "shall constitute, or be deemed to constitute, an obligation of future appropriations of the General Assembly." (Grant Agreement, § 1.) It also cautioned that none of the parties' "rights, duties, and obligations" would be binding until the Ohio Revised Code's requirements—expressly including Section 126.07—had been satisfied and "all funds [had] been made available." (*Id.* § 2.) Although the Complaint claims that the Grant Agreement was valid and binding, it does not allege that OBM issued the fiscal certification required by Section 126.07 or that any grant funds were disbursed. (*See* Compl. ¶¶ 28–30, 69.)

In March 2025, before grant funds were disbursed, the 136th Ohio General Assembly amended the 2024 community investments appropriations by enacting Amended Substitute House Bill 54 (the "Amendment"). (*Id.* ¶ 32.)[3] The Amendment specifically eliminated the line item for the Flats River Development. (*Id.* ¶¶ 32–33.)

Aggrieved by the loss of its grant, Plaintiff sued four state officials in their official and individual capacities. (*Id.* ¶¶ 5–8.) John Fortney is the Director of Communications for the Ohio Senate. (*Id.* ¶ 5.) Robert McColley is the President of the Ohio Senate. (*Id.* ¶ 6.) Matt Huffman is the Speaker of the Ohio House of Representatives. (*Id.* ¶ 7.) And Kimberly Murnieks is OBM's Director. (*Id.* ¶ 8.) Plaintiff purports to sue each Defendant in their official capacity under *Ex parte Young* for prospective declaratory and injunctive relief, and in their individual capacity for damages. (*Id.* ¶¶ 5–10.)

---

[3] Relevant portions of Sub. H.B. 54 are attached as Appendix C. The full text of Sub. H.B. 54 as enrolled can be found at the Ohio General Assembly website at: https://search-prod.lis.state.oh.us/api/v2/general_assembly_136/legislation/hb54/07_EN/pdf/. As with Sub. H.B. 2, the Court may consider its text without converting the motion into one for summary judgment. *See Tuente Livestock*, 888 F. Supp. at 1418.

Plaintiff suggests that the Amendment was driven by "political considerations" involving unnamed third parties associated with the project. (*See id.* ¶¶ 62, 75, 81.) But the Complaint identifies no specific conduct by Speaker Huffman or President McColley apart from their alleged involvement in the legislative decision to eliminate the appropriation. (*See id.* ¶¶ 6–7, 32–43.) It identifies Fortney as the Senate's Director of Communications but does not specify any act by him that deprived Plaintiff of a constitutional right. (*See id.* ¶¶ 5, 18–26.) Nor does it allege that Director Murnieks proposed, directed, or participated in the legislative decision; at most, it attributes to her OBM's implementation of the Amendment after its enactment. (*See id.* ¶¶ 8, 32–43.)

## SUMMARY OF ARGUMENT

This Court should dismiss the Complaint on several threshold grounds. State sovereign immunity bars Plaintiff's official-capacity claims because Plaintiff seeks retroactive payment from Ohio's treasury rather than prospective relief from an ongoing or impending violation of federal law. Plaintiff also lacks standing to seek prospective relief against the Legislative Defendants, who cannot redress Plaintiff's alleged injury.

Plaintiff's individual-capacity claims are also barred. Absolute legislative immunity protects the Legislative Defendants from suits seeking damages arising from protected legislative functions. And qualified immunity protects OBM Director Murnieks because the Complaint alleges neither a personal constitutional violation by her nor clearly established law prohibiting her from implementing a law that no court has invalidated.

Plaintiff's state-law claims do not belong in this Court. *Pennhurst* bars the official-capacity claims, while Ohio claims related to the Grant Agreement belong—if anywhere—in the Ohio Court of Claims. And in the absence of an immunity determination from that court, this Court lacks jurisdiction over the individual-capacity claims.

Even if the Court were to reach the merits, it should dismiss all claims. As for the federal claims, Plaintiff's procedural due-process theory improperly demands individualized notice and a hearing before legislative appropriations decisions. Its substantive due-process claim does not allege the violation of a fundamental right. Binding Sixth Circuit precedent bars its Contracts Clause claim under Section 1983. An appropriations decision withholding grant funds is not a bill of attainder. And Plaintiff does not plausibly plead a "class of one" equal-protection claim. The state-law claims either allege State obligations—rather than ones owed by Defendants personally—or fail under governing law. The Court should thus dismiss the Complaint against all Defendants.

## ARGUMENT

### 1. State sovereign immunity bars the official-capacity claims against all Defendants.

Plaintiff asks for "prospective declaratory and injunctive relief" against each Defendant in their "official capacity pursuant to *Ex Parte Young*." (Compl. ¶¶ 5–8.) But the Complaint does not describe the injunctive relief sought, beyond a vague request for an "injunction preventing Defendants from enforcing the Grant rescission and requiring Defendants to honor the Grant Agreement." (*Id.* at 15.) Nor does the Complaint specifically describe any Defendant's role in a continuing or threatened violation of Plaintiff's rights, beyond a general allegation that every "named Defendant has a specific connection to the enforcement of the challenged legislative action." (*Id.* ¶ 10.) These generalized allegations do not qualify Plaintiff's official-capacity claims for *Ex parte Young*'s limited exception to state sovereign immunity. Instead, they reveal that Plaintiff seeks the very kind of relief barred by state sovereign immunity: an order requiring Ohio to undo a completed legislative act and pay Plaintiff the $3.5 million that the General Assembly refused to appropriate.

To preserve our system of federalism, the Eleventh Amendment generally protects States from private suit in federal court. *See Alden v. Maine*, 527 U.S. 706, 719–30 (1999). States' sovereign immunity extends to claims against state officials in their official capacity, given that such actions are effectively against the State. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).[4] Courts have created several exceptions to Eleventh Amendment immunity, including the *Ex parte Young* doctrine that the Complaint attempts to invoke, but no exception applies here. (Compl. ¶ 7.)

The *Ex parte Young* doctrine allows "a private party to seek prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal or statutory rights." *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 733 (6th Cir. 2022); *see generally Ex parte Young*, 209 U.S. 123 (1908). Such relief is appropriate only "when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015). But "the doctrine does not extend to retroactive relief or claims for money damages." *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017).

Plaintiff's official-capacity claims do not qualify for *Ex parte Young*'s exception. Instead, they seek the precise retroactive relief that the Eleventh Amendment bars: compensation from the State's treasury for a past wrong. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."); *see also Va. Off. for Prot. & Advoc. v.*

---

[4] Because this immunity creates "a true jurisdictional bar," it "must be decided before the merits." *Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018) (internal quotation omitted).

*Stewart*, 563 U.S. 247, 256–57 (2011) ("*Ex Parte Young* cannot be used to obtain an injunction requiring the payment of funds from the State's treasury.").

The General Assembly enacted the Amendment eliminating the appropriation in March 2025, before any grant funds were disbursed. (Compl. ¶¶ 32–33.) So Plaintiff's alleged injury—the loss of grant funds—has already happened. For that reason, Plaintiff alleges throughout that it "has suffered damages"—not that it faces a threat of imminent harm. (*Id.* ¶¶ 50, 58, 65, 70, 77, 83, 88, 98.) What Plaintiff really seeks is an injunction requiring the State to disburse the rescinded OBM grant, not an injunction prohibiting future conduct by a specific state official. (*See id.* at 15.)

Whatever labels Plaintiff affixes to its Complaint, "money is the primary thrust of the suit," and "there is no constitutional defect that will be remedied by compliance with an order of the court other than the failure to make a onetime payment of money." *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008) (cleaned up).[5] This Court should reject Plaintiff's attempted end-run around the State of Ohio's sovereign immunity.

The official-capacity claims against the Legislative Defendants suffer from an additional defect: none is a proper *Ex parte Young* defendant. That doctrine applies only where an official has "some connection with the enforcement of the act" challenged by the plaintiff. *Ex parte Young*, 209 U.S. at 157. And the connection must be concrete: more "than general authority to enforce the challenged laws" is required, *Block v. Canepa*, 74 F.4th 400, 412 (6th Cir. 2023), and the exception "does not apply when a defendant state official has neither enforced nor threatened

[5] The same goes for Plaintiff's passing request for declaratory relief, since a declaration addressing only past liability does not qualify as prospective relief under *Ex parte Young*. *See Green v. Mansour*, 474 U.S. 64, 73 (1985).

to enforce the allegedly unconstitutional state statute," *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996).

Here, Plaintiff alleges no enforcement connection for the Legislative Defendants—nor can it. The Legislative Defendants do not control OBM, administer its grant program, or have the power to disburse grant funds. Nor does Plaintiff allege that any Legislative Defendant has enforced or threatened to enforce the Amendment against Plaintiff. Speaker Huffman and President McColley are legislative leaders, and Fortney is a legislative staffer—not executive officials charged with administering state programs or enforcing Ohio law. Standing alone, their alleged roles in the legislative process before the Amendment's enactment reveal no enforcement connection afterward. Otherwise, every legislator who participated in passing a challenged statute would be a proper *Ex parte Young* defendant, despite having no power to administer or enforce it.

Because Plaintiff seeks retroactive monetary relief for a completed injury rather than prospective relief from a threatened violation of federal law—and because the Legislative Defendants also lack a sufficient enforcement connection—Plaintiff's official-capacity claims fall outside *Ex parte Young* and are barred by Ohio's sovereign immunity.

**2. Plaintiff lacks standing to seek prospective relief against the Legislative Defendants.**

Plaintiff's official-capacity claims against the Legislative Defendants suffer from a separate jurisdictional defect: injunctive relief against them cannot redress Plaintiff's asserted injury.

A plaintiff "must demonstrate standing for each claim" it presses—a burden it must carry "separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation omitted); *see also TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross."). The "irreducible constitutional minimum of

standing contains three elements": 1) an "injury in fact"; 2) "fairly traceable" to the defendant; and 3) "likely" to be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). The third element, redressability, requires a showing that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC) Inc.*, 528 U.S. 167, 181 (2000).

Plaintiff's official-capacity claims against the Legislative Defendants suffer from a fundamental "redressability defect": the Complaint has "failed to show what a federal court could order [them] to do or refrain from doing to give [Plaintiff] relief." *See Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032 (6th Cir. 2022). The Complaint identifies Speaker Huffman as the Speaker of the Ohio House, President McColley as President of the Ohio Senate, and Fortney as the Senate's Director of Communications. (Compl. ¶¶ 5–7.) It does not allege that any of them administers the grant program, controls OBM (the agency allegedly withholding funds), or can unilaterally restore the appropriation or direct payment under the Grant Agreement.

So even a favorable decision on Plaintiff's official-capacity claims against the Legislative Defendants would not cure its alleged injury—*i.e.*, the loss of OBM grant funds. (*See id.* ¶¶ 32, 42.) Releasing those funds would require action by state actors outside the Legislative Defendants' unilateral control. Only independent parties could provide the relief Plaintiff seeks, meaning that its injury is not redressable by its official-capacity claims against the Legislative Defendants. *See Murthy v. Missouri*, 603 U.S. 43, 57 (2024) ("[It] is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party.") (internal quotation omitted).

Because the Complaint contains no "specific, plausible allegations about what" the Legislative Defendants "might do to injure" Plaintiff going forward, it has "shown no basis on which [it] can seek an injunction—an *in personam* decree coercing [them] to act or refrain from acting—or a declaratory judgment, the real value of which is to influence the future behavior of the defendant[s] towards the plaintiff." *See Universal Life Church*, 35 F.4th at 1031–32. Plaintiff thus lacks standing to press these official-capacity claims against the Legislative Defendants.

**3. Legislative immunity bars Plaintiff's individual-capacity claims against the Legislative Defendants.**

Plaintiff seeks damages against the Legislative Defendants in their individual capacities. (Compl. ¶¶ 5–7.) But absolute legislative immunity bars all claims for damages, state or federal, arising from their performance of legislative functions—precisely the conduct at issue.

Since at least the English Bill of Rights of 1689, our constitutional tradition has enshrined the fundamental "privilege of legislators to be free from arrest or civil process for what they do or say in legislative proceedings." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951). This privilege safeguards the legislature's "dignity and independence" by ensuring that suits cannot be used "to harass any refractory member" for what he says or does in the legislature. 1 William Blackstone, *Commentaries on the Laws of England* *164 (George Sharswood ed., 1893).

Recognizing this essential safeguard of republican self-government, the Supreme Court has concluded that legislators "are absolutely immune from suit under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998).[6] This immunity applies to both federal

---

[6] Likewise, the Ohio Constitution provides a parallel legislative immunity. Article II, Section 12 states that "Senators and Representatives, during the session of the general assembly shall be privileged from arrest . . . and for any speech, or debate, in either house, they shall not be questioned elsewhere." Ohio Const. art. II, § 12. Ohio courts have long recognized this privilege. *See Inc. Vill. of Hicksville v. Blakeslee*, 134 N.E. 445, 448 (Ohio 1921) ("That legislative officers are not liable personally for their legislative acts is so elementary, so fundamentally sound, and

and state legislators, *Tenney*, 341 U.S. at 376, and "is equally applicable to § 1983 actions seeking declaratory or injunctive relief" as it is to suits for damages, *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 732 (1980).

While this immunity "does not cover everything lawmakers do," *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 364 (6th Cir. 2022), it does protect speech and conduct in the "legislative sphere"—what is "generally done in a session of the [legislature] by one of its members in relation to the business before it," *id.* at 365 (quoting *Gravel v. United States*, 408 U.S. 606, 624–25 (1972)). Acts that are "quintessentially legislative"—and quintessentially protected—involve "integral steps in the legislative process," like voting on legislation, *Bogan*, 523 U.S. at 55, or making budget decisions, *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 216–19 (6th Cir. 2011) (en banc). And because the privilege would offer little protection if a plaintiff could evade it merely by alleging an improper aim, it "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54. Legislative aides and staff share this immunity when their conduct is in service to a legislator. *Gravel*, 408 U.S. at 616–17.

Here, Plaintiff's Complaint strikes at the core of this "legislative sphere." To the extent that the Complaint attributes conduct to Speaker Huffman or President McColley, it identifies only their participation in the legislative process that produced the Amendment—not a separate administrative or enforcement act. (*See* Compl. ¶¶ 32–43.) And the Complaint identifies no specific act by Fortney, beyond acting as a legislative spokesman.[7] (*See id.* ¶ 5.)

---

has been so universally accepted, that but few cases can be found where the doctrine has been questioned and judicially declared.").

[7] To the extent that Plaintiff claims that Fortney's communications or other assistance were integral to the legislative process that produced the Amendment, he shares in the legislators'

Enacting an appropriations amendment is a "quintessentially legislative" act, reflecting a policy judgment about how public funds should be allocated. *Bogan*, 523 U.S. at 55–56; *see also Smith*, 641 F.3d at 218–19. That is true no matter the political motive that Plaintiff attributes to the Amendment. *Bogan*, 523 U.S. at 54; *Tenney*, 341 U.S. at 377. Since Plaintiff's individual-capacity claims against Speaker Huffman and President McColley arise exclusively from protected legislative acts—and because Fortney is also immune to the extent that he assisted those acts—this Court should dismiss those claims.[8]

**4. Qualified immunity bars Plaintiff's individual-capacity claims against OBM Director Murnieks.**

Plaintiff also seeks damages against OBM Director Murnieks in her individual capacity. (Compl. ¶ 8.) But qualified immunity bars those claims, since the Complaint neither alleges that Murnieks personally violated Plaintiff's constitutional rights nor identifies clearly established law prohibiting her from implementing the General Assembly's funding decision.

---

immunity. And if the Complaint fails to allege any such conduct, it supplies no basis for Section 1983 liability in the first place. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008).

[8] The Sixth Circuit has held that those who perform legislative functions, whether formally legislators or not, "may not be sued as individuals for money damages or declaratory or injunctive relief"—yet has failed to apply that immunity to bar official-capacity claims. *Smith*, 641 F.3d at 218–19. But as other circuits have explained, under *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719 (1980), legislative immunity bars *all* actions against legislators "acting in their legislative capacity, regardless of the relief sought or the nature of the suit"—including against suits for "prospective relief against legislators acting in their official capacity." *Gays Against Groomers v. Garcia*, 169 F.4th 981, 996 (10th Cir. 2026); *accord Cushing v. Packard*, 30 F.4th 27, 39–40 (1st Cir. 2022); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 82–88 (2d Cir. 2007); *Scott v. Taylor*, 405 F.3d 1251, 1255 (11th Cir. 2005). To the extent that this Court refuses to dismiss the official-capacity claims against the Legislative Defendants, they hereby preserve for appellate review the argument that the Sixth Circuit should correct *Smith*'s apparent mistake and hold that legislative immunity also bars official-capacity claims.

Qualified immunity shields government officials performing discretionary functions from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In simpler terms, qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Like legislative immunity, this is an "*immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). To overcome qualified immunity, Plaintiff must establish two things: (1) that Murnieks violated a constitutional right; and (2) that the right was clearly established when she acted. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address either requirement first, and the failure to satisfy either ends the inquiry. *Id.* at 236. Both requirements are objective: they turn on the official's conduct and governing law, not on her subjective beliefs or motivations. *Harlow*, 457 U.S. at 817–19.

The Complaint fails at both steps. The Complaint identifies Murnieks only as OBM Director and alleges generally that she acted under color of state law. (Compl. ¶ 8.) It does not allege that she directed, authorized, or participated in the General Assembly's decision to rescind the grant. (*See id.* ¶¶ 32–43.) Since Section 1983 permits liability only for an "official's own individual actions," these allegations do not state a claim against Murnieks personally. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Nor does the Complaint identify clearly established law prohibiting Murnieks from implementing the General Assembly's grant rescission. The relevant question is "whether the violative nature of [Murnieks's] *particular* conduct is clearly established" by existing precedent. *Mullenix v. Luna,* 577 U.S. 7, 12 (2015) (quoting *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011)).

But no binding cases prohibit executive officials from implementing the legislative rescission of a discretionary appropriation. To the contrary, the Sixth Circuit has held that officials who implement "validly enacted state laws that no court has invalidated" generally act reasonably, since those laws are presumptively constitutional. *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016). And here, no allegation suggests that the Amendment was so "grossly and flagrantly unconstitutional" that any reasonable official would have refused to implement it. *Id.* at 442 (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979)).

**5. *Pennhurst* immunity and Ohio's Court of Claims framework bar Plaintiff's Ohio law claims.**

Counts IV, VII, VIII, and IX arise exclusively under Ohio law. (Compl. ¶¶ 66–98.) The Supreme Court's *Pennhurst* decision bars the official-capacity claims. And all state-law claims are subject to the requirements of the Ohio Court of Claims Act. In any event, none of the Ohio law counts states a claim against the Defendants personally.[9]

**a. *Pennhurst* bars Plaintiff's official-capacity state-law claims.**

As with its federal claims, Plaintiff's Ohio law claims cannot overcome state sovereign immunity. The Eleventh Amendment bars state-law claims against state officials in their official capacities, and *Ex parte Young* provides no exception for state-law claims (even when a plaintiff seeks prospective relief). *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–06 (1984). As the Supreme Court explained, "it is difficult to think of a greater intrusion on state

---

**9** Ohio's own legislative immunity provides an additional bar to Plaintiff's state law claims against the Legislative Defendants. *Hicksville*, 134 N.E. at 448 ("[N]o one would claim that a legislator would be liable either in his official or in his individual capacity for the exercise of his judgment and discretion in voting."); *see also Kniskern v. Amstutz*, 760 N.E.2d 876, 876–78 (Ohio Ct. App. 2001) (affirming dismissal of suit against legislators who voted for tort-reform legislation).

sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106.

The Sixth Circuit applies this rule categorically: "pendent state law claims against state officials in their official capacity are barred by the Eleventh Amendment." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 520–21 (6th Cir. 2007). This holds true no matter the relief sought, since *Ex parte Young* permits prospective relief only for a "continuing violation of *federal* law." *White's Landing Fisheries, Inc. v. Ohio Dep't of Nat. Res.*, 174 F.4th 493, 500 (6th Cir. 2026) (emphasis added).

*Pennhurst*'s rule disposes of all four state-law claims against Defendants in their official capacities. Counts VII and VIII ask this Court to decide whether Ohio officials violated the Ohio Constitution and to order them to comply with it. (Compl. ¶¶ 84–93.) But federal courts have "no authority" to grant equitable relief against Ohio officials for violating the Ohio Constitution. *Ladd v. Marchbanks*, 971 F.3d 574, 582 (6th Cir. 2020). *Pennhurst* likewise bars Counts IV and IX, which ask this Court to enforce Ohio contract and estoppel law against state officials acting on the State's behalf. (Compl. ¶¶ 66–71, 94–98.) *See Experimental Holdings*, 503 F.3d at 520–21.

Indeed, Plaintiff's requested relief confirms that these are claims against Ohio itself. Plaintiff seeks $3.5 million and an order requiring Defendants to "honor the Grant Agreement." (Compl. at 15–16.) Any judgment granting that relief would effectively enjoin the State and its treasury. *See Ladd*, 971 F.3d at 578 ("Plaintiffs sued [the director] in his official capacity, so the Ohio treasury is responsible for any judgment against him. Thus, Ohio's sovereign immunity extends to [him].").

**b. Ohio's Court of Claims framework independently bars Counts IV and IX and the individual-capacity state-law claims.**

Ohio's Court of Claims Act independently requires dismissal. Ohio has waived its sovereign immunity for certain civil claims, but only on the condition that those claims be brought in the Ohio Court of Claims. Ohio Rev. Code § 2743.02(A)(1). That limited waiver is not a consent to suit in federal court. *Ohio Inns, Inc. v. Nye*, 542 F.2d 673, 681 (6th Cir. 1976). To the contrary: the Ohio Court of Claims possesses "exclusive, original jurisdiction of all civil actions" against the State permitted by that waiver. Ohio Rev. Code § 2743.03(A)(1).

Counts IV and IX fall squarely within this framework. Count IV alleges that the "State breached the Grant Agreement" by rescinding the appropriation. (Compl. ¶ 69.) And Count IX alleges that "the State" should be estopped from rescinding its purported obligations under the Grant Agreement. (*Id.* ¶ 96.) These are claims against the State of Ohio—so Plaintiff must pursue them, if anywhere, in the Ohio Court of Claims.

Even labeling those claims as individual-capacity ones does not allow Plaintiff to bypass the Court of Claims. Ohio Revised Code § 9.86 gives state officers and employees immunity from personal liability for acts within the scope of their employment, unless they "acted with malicious purpose, in bad faith, or in a wanton or reckless manner." And Ohio Revised Code § 2743.02(F) vests the Ohio Court of Claims with "exclusive, original jurisdiction" to decide whether a state officer or employee can claim that immunity. *McCormick v. Miami Univ.*, 693 F.3d 654, 664–65 (6th Cir. 2012). Since the Complaint does not allege that Plaintiff sought—much less obtained—an immunity determination from the Court of Claims, this Court lacks jurisdiction over the individual-capacity state-law claims.

**6. The federal claims independently fail on the merits.**

Each threshold bar independently warrants dismissal of the entire Complaint. But even on the merits, the Complaint does not survive a Rule 12(b)(6) challenge.

A complaint must be dismissed if it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted). The Court should "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010) (internal quotation marks and citation omitted).

**a. The due process claims fail because a legislative appropriations decision does not require individualized notice and a hearing or implicate a fundamental right.**

Plaintiff asserts claims under the U.S. Constitution's Due Process Clause, in both its procedural and substantive dimensions. But neither claim alleges a constitutional violation.

Plaintiff's procedural due-process claim (Count I) faults Defendants for "rescinding the Grant through the Amendment without providing any notice or opportunity to be heard." (Compl. ¶ 46.) But the challenged deprivation resulted from legislative action rather than an administrative adjudication requiring individualized notice and a hearing. (*See id.* ¶¶ 32–33.) As the Sixth Circuit has explained, "no notice or opportunity to be heard" is required before "any legislative action." *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614, 619 (6th Cir. 1997). The legislative process itself affords all the process that is constitutionally due. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982).

Plaintiff's substantive due-process claim (Count III) fares no better. It contends that "legislative rescission of the Grant" divested it of a "constitutionally protected interest . . . and is arbitrary and irrational." (Compl. ¶¶ 61, 64.) But the claimed interest arises from the Grant

Agreement with OBM. (*Id.* ¶ 62.)[10] Such a state-created contractual interest is not a fundamental right. *See Charles v. Baesler*, 910 F.2d 1349, 1353 (6th Cir. 1990) (concluding that "most, if not all, state-created contract rights" create no interests that "rise to the level of fundamental" rights). Accordingly, Section 1983 does not allow substantive due-process claims where, as here, "the [alleged] deprivation is a simple breach of contract and there is [an] adequate state breach of contract action available as a remedy." *Ramsey v. Bd. of Educ. of Whitley Cnty.*, 844 F.2d 1268, 1273 (6th Cir. 1988).

In any event, because Plaintiff identifies neither a suspect classification nor a fundamental right, the Amendment must satisfy only rational-basis review. *See Vacco v. Quill*, 521 U.S. 793, 799 (1997).[11] The Amendment easily clears this deferential standard: the General Assembly could rationally conclude that the prospective grant was a poor use of taxpayer funds. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314–15 (1993). Plaintiff's speculation that the rescission was politically motivated does not alter this conclusion. After all, rational-basis review does not turn on legislators' alleged motivations; a legislative choice will survive if any reasonably conceivable justification existed, "whether or not [it] actually motivated the legislature." *Id.* at 315.

**b. Sixth Circuit precedent bars Plaintiff's Contracts Clause claim under Section 1983.**

Plaintiff also asserts a violation of the U.S. Constitution's Contracts Clause (Count II). (Compl. ¶¶ 51–58.) But as Plaintiff concedes (*id.* ¶ 57), Sixth Circuit precedent bars this claim:

---

[10] As discussed below, in connection with Plaintiff's breach-of-contract claim, Plaintiff does not plausibly allege a contractual entitlement to the grant funds.

[11] To the extent that Plaintiff invokes a "shocks the conscience" test, that standard governs "abusive executive action" and does not displace tests governing legislative action. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998).

"an alleged Contracts Clause violation cannot give rise to a cause of action under § 1983." *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017). Unless overruled or superseded, that decision requires Count II's dismissal. *See Lathfield Invs., LLC v. City of Lathrup Vill.*, 136 F.4th 282, 305 (6th Cir. 2025).[12]

**c. The Amendment is an appropriations enactment, not a bill of attainder.**

In Count V, Plaintiff claims that the Amendment is "a prohibited bill of attainder because it specifically targets" Plaintiff and nixed the planned OBM grant "without any judicial proceedings." (Compl. ¶ 74.) But this theory would extend the Bill of Attainder Clause far beyond its historical roots and doctrinal limits.

The Clause forbids "legislative acts" that "apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315 (1946).[13] Essentially, the Clause acts as "a general safeguard against legislative exercise of the judicial function, or more simply—trial by legislature." *United States v. Brown*, 381 U.S. 437, 442 (1965). But specificity alone is not enough: the legislation must also impose a burden so severe that it rises to the level of

---

[12] Even if permitted as a standalone Section 1983 claim, Count II would fail on the merits. Neither the appropriation nor the Grant Agreement unmistakably binds a future General Assembly. *See Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 600–01 (6th Cir. 2016). Indeed, the Grant Agreement expressly disclaims any "obligation of future appropriations" and makes all rights and obligations contingent on the availability and certification of funds under Ohio Revised Code § 126.07. (Grant Agreement §§ 1–2.) Since the Complaint does not allege that OBM issued that certification before the appropriation was rescinded, much less that the funds were actually disbursed, Plaintiff identifies no binding obligation.

[13] "In England a bill of attainder originally connoted a parliamentary Act sentencing a named individual or identifiable members of a group to death." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 473 (1977).

"punishment." *Selective Serv. Sys. v. Minn. Pub. Int. Rsrch. Grp.*, 468 U.S. 841, 851 (1984). Courts assess that requirement by considering the burden's historical character, whether it serves nonpunitive purposes, and whether the legislative record betrays punitive intent. *Id.* at 852.

None of these considerations suggests that the Amendment is a prohibited bill of attainder. It does not adjudicate Plaintiff's guilt. *See Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 323 (1867). Nor does it impose any historically recognized punishment. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 474 (1977) (identifying historical "punishments" as "execution," "imprisonment," "banishment," and "the punitive confiscation of property by the sovereign"). Instead, it merely eliminates an appropriation of public funds. *See ACORN v. United States*, 618 F.3d 125, 137 (2d Cir. 2010) ("The withholding of appropriations . . . does not constitute a traditional form of punishment."); *accord Planned Parenthood Fed'n of Am., Inc. v. Kennedy*, 162 F.4th 155, 170 (1st Cir. 2025). Nor does the Complaint identify any legislative finding of wrongdoing or other facts plausibly showing a punitive purpose. (*See* Compl. ¶¶ 32–43.)

Indeed, appropriations decisions are inherently legislative, not judicial. *See The Federalist No. 78*, at 465 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ("The legislature . . . commands the purse," while "[t]he judiciary . . . has no influence over either the sword or the purse."). Given that this "role is traditionally a legislative function, not a judicial function, the Bill of Attainder Clause does not outlaw legislative action." *Zilich v. Longo*, 34 F.3d 359, 363 (6th Cir. 1994). The Amendment does not punish Plaintiff without a judicial trial; it simply affects who receives taxpayer funds. Count V thus fails as a matter of law.

**d. Plaintiff does not plead a plausible "class of one" equal protection claim.**

Plaintiff also includes a "class of one" claim under the U.S. Constitution's Equal Protection Clause (Count VI), alleging that it was treated less favorably than other grant recipients. (Compl. ¶ 80.) That claim fails too.

To prevail on a "class of one" claim, a plaintiff must show that: (1) it was intentionally treated differently from others similarly situated; and (2) there was no rational basis for the differing treatment. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff alleges neither element. The Complaint does not plausibly allege that other entities receiving (and retaining) community-investment grants were similarly situated to it in all material respects. *See TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 789–91 (6th Cir. 2005). Nor does Plaintiff debunk every conceivable rational basis the General Assembly might have to rescind its grant. *See Beach Commc'ns*, 508 U.S. at 314–15. As a result, this Court should dismiss Count VI.

**7. The state-law claims state no claim against Defendants personally.**

Even if this Court could reach Plaintiff's state-law claims, none states a claim against Defendants personally—and Counts VII and VIII independently fail on their own terms.

*First*, Plaintiff's breach of contract claim (Count IV) runs against the "State," not any Defendant individually. (*See* Compl. ¶ 69 ("The State breached the Grant Agreement.")) The Grant Agreement was between Plaintiff and OBM; no individual Defendant was a party or otherwise privy to it. (*See id.* ¶¶ 28, 30, 67.) Because "a contract is binding only upon the parties to a contract and those in privity with them," Count IV states no claim against Defendants

individually. *Am. Rock Mechs., Inc. v. Thermex Energy Corp.*, 608 N.E.2d 830, 833 (Ohio Ct. App. 1992).[14]

*Second*, Plaintiff's takings claim (Count VII) merely repackages its contract claim. The Complaint alleges that Plaintiff had a property interest in funds allegedly owed under the Grant Agreement. (Compl. ¶¶ 86–87.) But a claim that the State failed to satisfy a contractual payment obligation sounds in contract, not takings. *See Smith v. Ohio State Univ.*, 266 N.E.3d 1, 17 (Ohio Ct. App. 2024). Nor does the Complaint allege that any Defendant personally took Plaintiff's property. So any claim for just compensation lies against the public entity responsible for the alleged taking—not against any of the Defendants personally. *See State ex rel. Shemo v. Mayfield Hts.*, 765 N.E.2d 345, 350 (Ohio 2002).

*Third*, Plaintiff's "One-Subject Rule" claim (Count VIII) fails because rescinding the OBM grant was rationally related to the appropriations bill. Ohio's one-subject rule is violated only if there is no "practical, rational or legitimate reason for combining provisions in one act." *State ex rel. Ohio Civ. Serv. Emps. Ass'n v. State*, 56 N.E.3d 913, 919 (Ohio 2016). For an

---

[14] Count IV also fails because Plaintiff failed to plead the satisfaction of a condition precedent that the Grant Agreement complied with Ohio Rev. Code § 126.07, which provides that no contract, agreement, or obligation "involving the expenditure of money chargeable to an appropriation" shall be "valid and enforceable unless the director of budget and management first certifies" an unobligated balance at least equal to the portion performed in the current fiscal year. Ohio Rev. Code § 126.07(A). The Ohio Constitution bars the State of Ohio from drawing money from the treasury without a specific appropriation and limits appropriations to two years. Ohio Const. art. II, § 22. A contract void for lack of fiscal certification cannot support recovery. *See, e.g., Duke Energy One, Inc. v. Cincinnati State Tech. & Cmty. Coll.*, 187 N.E.3d 28, 35 (Ohio Ct. App. 2022). Once funding disappears, the obligation ends. *See State ex rel. Preston v. Ferguson*, 166 N.E.2d 365, 372–73 (Ohio 1960). Here, after the 136th General Assembly struck the $3.5 million appropriation, the Director of Budget and Management could not certify the required unobligated balance. Therefore, the Agreement was not "valid and enforceable," so no breach of any contractual obligation occurred.

appropriations bill, all this rule demands is that the challenged provision be "rationally related to budgeting for the operation of the state government." *Id.* at 922 (holding that "prison-sale provisions [that] were intended to generate revenue" included in an appropriations bill did not violate the rule). The Amendment easily clears that bar: rescinding a $3.5 million line item directly determines whether Ohio will appropriate and expend those taxpayer funds.

*Fourth*, Plaintiff's estoppel claim (Count IX), like Count IV, alleges an obligation of the "State" rather than any Defendant. Plaintiff alleges only that "the State is estopped from rescinding its obligations" under the Grant Agreement. (Compl. ¶ 96.) Ohio courts may apply estoppel to prevent a party from selectively accepting a contract's benefits while refusing to bear its burdens. *See AtriCure, Inc. v. Meng*, 12 F.4th 516, 526–28 (6th Cir. 2021). But here, since Plaintiff does not allege that any Defendant was a party to the Grant Agreement or accepted any benefits under it, equitable estoppel cannot bind them.

## CONCLUSION

For these reasons, this Court should dismiss Plaintiff's Complaint as barred by legislative and qualified immunity, for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

*<u>/s/ Mark D. Wagoner</u>*
Mark D. Wagoner (0068577)
Matthew T. Kemp (0093136)
SHUMAKER, LOOP & KENDRICK, LLP
1000 Jackson Street
Toledo, Ohio 43604
Phone: (419) 241-9000
Fax: (419) 241-6894
mwagoner@shumaker.com
mkemp@shumaker.com

*Counsel for Defendants President of the Ohio Senate Robert McColley, Director of Communications of the Ohio Senate John Fortney, and Director of the Ohio Office of Budget and Management Kimberly Murnieks*

*/s/ W. Stuart Dornette*
W. Stuart Dornette (0002955)
Philip D. Williamson (0097174)
Spencer S. Cowan (0099556)
TAFT STETTINIUS & HOLLISTER LLP
301 E. Fourth Street, Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 381-2838
Fax: (513) 381-0205
dornette@taftlaw.com
pwilliamson@taftlaw.com
scowan@taftlaw.com

J. Jackson Froliklong (00105679)
TAFT STETTINIUS & HOLLISTER LLP
200 Public Square, Suite 3500
Cleveland, Ohio 44114-2302
Phone: (216) 241-2838
Fax: (216) 241-3707
jfroliklong@taftlaw.com

*Counsel for Defendant Speaker Matt Huffman*

## LOCAL RULE 7.1(f) CERTIFICATION

The undersigned certifies that this case has not been assigned to any track. The accompanying Memorandum complies with Local Civil Rule 7.1(f) and the Court's October 8, 2026 Order because the brief contains 7,269 words.

*/s/ Mark D. Wagoner*
Mark D. Wagoner (0068577)

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the above was filed electronically on October 13, 2026. Notice of this filing will be sent to all parties through the Court's electronic filing system.

*/s/ Mark D. Wagoner*
Mark D. Wagoner (0068577)

305028737v2